UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KARLEEN CRYSTAL LINFORD,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:13-cv-00194-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendant United States of America's Motion to Dismiss, For Judgment on the Pleadings, or for Summary Judgment. (Dkt. 21). The United States argues that Linford's negligence claim fails as a matter of law under two statutes. First, the United States claims that the discretionary function exception to the Federal Tort Claims Act ("FTCA") protects the Government's conduct. Second, it claims immunity under the State of Idaho's Recreational Use Statute ("IRUS"), Idaho Code § 36-1604. *Def's Memo in Support of Mot. to Dissmiss* at 1–2, Dkt. 21–1. The United States therefore suggests it is entitled to judgment on the pleadings or summary judgment. As explained below, the Court concludes that the United States is immune under IRUS and therefore entitled to summary judgment.

MEMORANDUM DECISION AND ORDER - 1

## BACKGROUND

### The Accident

On June 11, 2011, Plaintiff Karleen Crystal Linford sustained injuries from an ATV accident, which she was driving over a cattle guard on a trail in the Caribou Targhee National Forest in Southeastern Idaho. *Compl.*, ¶ 7, Dkt. 1. When crossing the cattle guard, the tires of Linford's ATV began to slip, and it rolled off the downhill side of the cattle guard, falling on top of her. *Id.* The accident damaged the ATV and Linford suffered serious injuries. *Id.*

### Design and construction of cattle guard

From 2000 through 2002, Assistant District Ranger David Sleight and Forest Technician Randall Michaelson designed the cattle guards to be installed in the Westside Ranger District ("District"). *Def. Statement of Undisputed Facts* ("*SOF*"), ¶¶ 16–17, Dkt. 21–2; *Sleight Dec.*, ¶¶ 4–5, Dkt. 21–7; *Michaelson Dec.*, ¶ 3, Dkt. 21–21. Sleight and Michaelson designed the cattle guard to be steel instead of wood for durability and fewer maintenance issues. *SOF*, ¶ 19, Dkt. 21–2; *Sleight Dec.*, ¶ 8(a), Dkt. 21–7; *Michaelson Dec.*, ¶ 4(a), Dkt. 21–21. Sleight and Michaelson considered various goals in designing the cattle guards, including managing livestock, safety to ATV riders, and cost. *Id.* The final design of the cattle guard was approximately 18 to 24 inches above ground and 12 feet long. *Id.* The length and height of the cattle guard was intended to keep livestock from jumping over the cattle guard. *SOF*, ¶ 19(b), Dkt. 21–2; *Sleight Dec.*, ¶ 8(b), Dkt. 21–7; *Michaelson Dec.*, ¶ 4(b), Dkt. 21–21. The cattle guard was composed

of three parts to allow for efficient transporting and installation. *SOF*, ¶ 19(b), Dkt. 21–2; *Michaelson Dec.*, ¶ 4(b), Dkt. 21–21. Sleight and Michaelson utilized steel rebar bars for the tread of the ramps and decks of the cattle guard to provide better tread for ATV tires and allow for easy removal if a cow leg were to become stuck in the cattle guard. *SOF*, ¶ 19(d), Dkt. 21–2; *Sleight Dec.*, ¶ 8(d), Dkt. 21–7; *see Michaelson Dec.*, ¶ 4(d), Dkt. 21–21. They chose 47 inches as the width of the cattle guard so that full length (20 feet) of the rebar bars could be used without waste. *SOF*, ¶ 19(e), Dkt. 21–2; *Michaelson Dec.*, ¶ 4(e), Dkt. 21–21. Furthermore, Sleight and Michaelson chose to make the cattle guard narrow because a wider cattle guard would encourage recreationalists to use impermissibly large vehicles on the trail. *SOF*, ¶ 19(e), Dkt. 21–2; *Sleight Dec.*, Dkt. ¶ 8(e), Dkt 21–7.

### Inspections

After the installation of the subject cattle guard, Michaelson rode over it two or three times to ensure that it was safe. *SOF*, ¶ 26, Dkt. 21–2; *Michaelson Dec.*, ¶ 9, Dkt. 21–21. Michaelson observed photos taken recently after Linford's accident and affirmed that the cattle guard appeared to be in the same condition that it had always been. *SOF*, ¶ 27, Dkt. 21–2; *Michaelson Dec.*, ¶ 11, Dkt. 21–21. Moreover, the Forest Service frequently rode over the cattle guard and never observed any problems with the unit. *SOF*, ¶ 29, Dkt. 21–2; *Sleight Dec.*, ¶ 15, Dkt. 21–7; *Michaelson Dec.*, ¶ 12; Dkt. 21–21. According to Wes Stumbo, the current Forest Engineer for the Caribou Traghee National Forest, "[t]he cattle[]guard itself shows no missing components and appears to be

serviceable." *Stumbo Dec.*, at USA_00007, Dkt. 26–8. Similarly, Linford had traversed the cattle guard on multiple occasions, and on the day of the accident, the cattle guard did not appear different to Linford than it previously had. *Hurwit Dec. Ex. 1* at 78, Dkt. 21–4[1].

### Linford's claims

Linford alleges that her accident was proximately caused by the U.S. Forest Service's negligent maintenance and construction of the cattle guard. *See Compl.*, ¶ 8, Dkt. 1. Linford claims that the Forest Service's forest technician Randall Michaelson's "decisions about how he would construct the subject cattle guard – how high, how wide and how steep to build it – were not 'grounded in social, economic, and political policy.'" *Pl.'s Resp.* at 9, Dkt. 26. Linford claims that rather than making Forest Service policy when he constructed the cattle guard, Michaelson was implementing existing policies of the Forest Service.

## LEGAL STANDARD

1. **Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

---

[1] In Linford's deposition, when asked if the cattle guard looked any different on the day of the accident than it had on previous occasions, Linford replied "[n]ot that I recall."

summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

### 1. Linford's Failure to Warn Claim

As an initial matter, the Court notes that in her response brief, Linford attempts to raise a new theory of liability – failure to warn. *See Pl.'s Resp.* at 8–10, Dkt. 26. A party cannot raise a new theory of liability in order to contest summary judgment. *Stations West, LLC v. Pinnacle Bank of Or.*, 338 Fed. Appx. 658, 660 (9th Cir. 2009). In *Stations West*, the Court stated that "[c]hanging the basis of liability at that point would have effectively amended the complaint after the close of discovery and initiation of summary judgment proceedings." *Id.* Here, raising the theory of liability of failure to warn would likewise effectively amend Linford's complaint. Accordingly, Linford's failure to warn claim is rejected.

### 2. Idaho's Recreational Use Statute and Summary Judgment on Linford's Negligence Claim

IRUS "provides immunity to those who make their land available to the public for recreational use without charge." *Albertson v. Fremont County, Idaho*, 834 F. Supp. 2d 1117, 1128 (D. Idaho 2011). IRUS applies to the United States because, under the FTCA, the United States is liable for tort claims "in the same manner and to the extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see McGhee v. City of Glenns Ferry*, 729 P.2d 396, 397 (Idaho 1986). IRUS confers immunity when three conditions are met: "(1) the person or entity asserting immunity must be an 'owner'

within the meaning of the statute; (2) the owner must have permitted the person to enter the property 'without charge'; and (3) the use of the property must be for recreational purposes." *Alberton*, 834 F. Supp. 2d at 1128 (citing Idaho Code § 36-1604(d)). However, IRUS will not immunize a party engaged in willful and wanton conduct. *Jacobsen v. City of Rathdrum*, 766 P.2d. 736, 739 (Idaho 1988).

Willful and wanton conduct involves a "radically different" mental state than negligence. *Jones v. United States*, 693 F.2d 1299, 1304 (9th Cir. 1982). Willful and wanton conduct means intentional or reckless actions, taken under circumstances where the actor knew or should have known that the actions created an unreasonable risk of harm and that the probability that the harm would occur was high. Idaho Civil Jury Instruction § 2.25; *see also O'Guin v. Bingham County*, 72 P.3d 849, 854 (Idaho 2003).

Here, the United States satisfies all of the conditions of IRUS: (1) the United States is the owner within the meaning of the statute; (2) the United States did permit Linford to be on the property without charge; and (3) Linford was using the property for recreational purposes. The Court also finds that IRUS bars Linford's suit because she has failed to allege willful and wanton conduct. In her Complaint, Linford alleges that "but for the *negligent* maintenance and construction of the [cattle guard], the accident would not have occurred." *Compl.*, ¶ 8, Dkt. 1 (emphasis added). In her response brief, Linford argues, "'negligently' as used in the Complaint incorporates all degrees of negligent conduct including willful and wanton conduct." *Resp.* at 3, Dkt. 26. This argument is without merit. Linford never alleged willful and wanton conduct in her Complaint, and

**MEMORANDUM DECISION AND ORDER - 7**

she never asked for leave to amend her Complaint to include such an allegation. Therefore, IRUS confers immunity to the United States.

In turn, the United States is entitled to summary judgment. There is no genuine issue of material fact as to whether the United States acted willfully and wantonly with respect to the cattle guard. Even had Linford pleaded willful and wanton conduct, she would need to show facts that (1) the Forest Service had actual or constructive knowledge that the cattle guard was a peril, (2) the Forest Service had actual or constructive knowledge that the cattle guard was highly likely to cause injury, and (3) the Forest Service intentionally or recklessly disregarded the risk of injury. There are no such factual allegations in the record.

There is no evidence in the record that the Forest Service knew or had reason to know that the cattle guard was a peril. In making this determination, courts generally consider whether have been prior accidents at the site. *See e.g., Spence v. United States*, 629 F. Supp. 2d 1068 (E.D. Cal. 2009); *Mattice v. U.S. Dep't of Interior*, 969 F.2d 818, 823 (9th Cir. 1992). Here, the cattle guard at issue, as well as others in the area, had been continuously used without any known accidents or incidents. *Sleight Decl.* at ¶ 16; *Tiller Decl.* at ¶ 16; *Youngblood Decl.* at ¶¶ 7-8. (Dkts. 21-9, 21-13, 21-22). Moreover, Forest Service personnel had inspected the cattle guard every year, used them on a regular basis, and, in fact, observed it in good-working condition only a week before the incident. *Sleight Decl.* at ¶¶ 11-13, 15; *Tiller Decl.* at ¶ 11, 14., *Michaelson Decl.* at ¶ 12; *Youngblood Decl.* at ¶ 6. (Dkts. 21-9, 21-13, 21-22). Under these circumstances, the

Forest Service could not have known or had reason to know that the cattle guard was a peril.

Likewise, there are no facts in the record indicating that the Forest Service had reason to believe there was a high degree of probability that an accident would occur. Similar to why the Forest Service had no reason to believe the cattle guard was in peril, the lack of incidents involving the cattle guard is important to this determination. *See Armstrong v. United States,* 2008 WL 5047680, at *7 (N.D. Cal. Nov. 24, 2008). Additionally, Linford herself had driven over the cattle guard several times without incident, suggesting a low probability of the accident occurring. *Hurwit Decl*. Ex. 1 at 51:22-24, 84:17-86:14. (Dkt. 31-4).

Finally, there is no evidence leading to the conclusion that the Forest Service acted with intentional or reckless disregard for the risk of injury. The Forest Service developed an inspection program for the very purpose of limiting accidents. *Sleight Decl*. at ¶¶ 11-13; *Tiller Decl*. at ¶ 11. (Dkt.s 21-7, 21-13). Accordingly, the United States is entitled to summary judgment.[2]

### ORDER

**IT IS HEREBY ORDERED:**

---

[2] Given the result above, the Court finds it unnecessary to address the Government's argument that the discretionary function exception to the FTCA warrants dismissal of Linford's claims.

1. Defendant's Motion for Summary Judgment (Dkt. 21) is **GRANTED** and all Linford's claims are dismissed with prejudice.

2. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: September 21, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court